In re Thomas E. CASSAR and
Jill Sanders, Debtors.

Banknorth, N.A., Successor in interest
to the Bank of New Hampshire,
Plaintiff,

v.

Jill Sanders, Defendant.

Bankruptcy No. 04–10770–MWV.
Adversary No. 04–1113–MWV.

United States Bankruptcy Court,
D. New Hampshire.

May 2, 2005.

Marc W. McDonald, Esq., Ford, Weaver & McDonald, P.A., for the Plaintiff.

Gerald D. Neiman, Esq., Neiman Law Office, for the Defendant.

## *MEMORANDUM OPINION*

MARK W. VAUGHN, Chief Judge.

The Court has before it the complaint of Banknorth, N.A., successor in interest to the Bank of New Hampshire ("Plaintiff") against Jill Sanders ("Debtor" or "Defendant"). The complaint seeks to except from discharge a debt owed by the Defendant to the Plaintiff pursuant to 11 U.S.C. § 523(a)(2)(A) and (B)[1]. On April 13, 2005, the Court conducted a half-day trial, at which it heard testimony from a represen-

tative of the Plaintiff, the Defendant and her husband.

### *JURISDICTION*

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

### *FACTS*

On April 12, 2005, the parties filed a stipulated statement of facts. (Ct.Doc. 15). At trial, these facts were supplemented by the testimony of the parties. The Defendant is a doctor of osteopathy with a current practice in Brattleboro, Vermont. The Defendant testified that, prior to the events of September 11, 2001, she lived in Manhattan in close proximity with what is now known as Ground Zero. Subsequent to the attack, she and her family moved to a house owned by her extended family in Harrisville, New Hampshire, to get away from Manhattan. For a period of time, she commuted to New York City by train to continue her practice. At some point in early 2002, she decided to establish a practice in Brattleboro, Vermont. After obtaining a checking account with the Plaintiff, she submitted a loan application to the Plaintiff for an SBA working capital loan in the amount of $50,000. According to the testimony of the Defendant and her husband, the loan was apparently solicited by Sarah Noble, a bank employee at the Marlborough office of the Plaintiff. Ms. Noble is no longer with the Plaintiff and did not testify at trial. The Defendant submitted to the Plaintiff a "Small Busi-

---

1. Unless otherwise noted, all statutory section references herein are to the Bankruptcy Re- form Act of 1978, as amended, 11 U.S.C. § 101, *et seq.*

ness Loan Application dated April 17, 2002." (Def.'s Ex. 101.) The application was completed by the Defendant and her husband. As part of the application process, she also submitted her tax returns for years 2000 and 2001. At the time she completed the application, she owed the IRS (jointly with her husband) approximately $125,935. (Ct. Doc. 15 at ¶ 21.) While the loan application did not specifically ask for tax liabilities (Ct. Doc. 15 at ¶ 24), she did not disclose this liability anywhere on the application. (Ct. Doc. 15 at ¶¶ 9 through 19.) The tax return she provided to the Plaintiff showed a tax liability of $64,885 for year 2000 and a tax liability of $61,049 for year 2001. (Def.'s Exs. 102 and 103.) The tax returns show no evidence of any payment of these liabilities. Even without these tax liabilities, the loan application showed a deficit net worth of $63,158.36. (Def.'s Ex. 101 and Ct. Doc. 15 at ¶ 15.)

### DISCUSSION

Based on the above set of facts, the Plaintiff argues that the failure to list the tax liability in the loan application constitutes the filing of a false financial statement under § 523(a)(2)(B) and misrepresentation or fraud under § 523(a)(2)(A).

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

(B) use of statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive.

11 U.S.C.A. § 523(a)(2)(A) and (B) (West 2004).

### Section 523(a)(2)(A) —Count II

■ The Court will first discuss § 523(a)(2)(A). In order to have a debt excepted from discharge pursuant to this section, there must be a false representation or actual fraud by the defendant, and there also must be justifiable reliance by the plaintiff. *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). The representation in question in this case is the failure to include the tax liability in the loan application form. The loan application required the Defendant to disclose, in writing, both her business and personal financial obligations. It is, in essence, a financial statement of the Defendant. Section 523(a)(2)(A) excepts from its scope "a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). The loan application is clearly within this exception. Count II is denied.

### Section 523(a)(2)(B) —Count I

■ Since the Court has found that the loan application is a financial statement in writing, § 523(a)(2)(B) is clearly applicable. The Court finds that the failure to include the tax liability in the application itself makes the application standing alone materially false respecting the Defendant's financial condition. 11 U.S.C. § 523(a)(2)(B)(i) and (ii). However, in or-

der to be excepted from discharge, the Plaintiff must have justifiably relied on this financial statement, *Field v. Mans, supra,* and the Defendant must have used it with the intent to deceive the Plaintiff. As to justifiable reliance, both parties rely on the case of *Sanford Inst. for Sav. v. Gallo,* 156 F.3d 71 (1st Cir.1998). The Court agrees with the Defendant that on the facts of this case, the *Sanford* case is not controlling. In that case, the Defendant forged the signature of his wife and failed to disclose to the plaintiff bank that the property he was giving as collateral for a line of credit had been transferred to his wife. The latter fact could have easily been discovered by a title search, but the court found justifiable reliance did not require the title search. However, unlike this case, the defendant in the *Sanford* case had a long-standing relationship with the plaintiff bank. The *Sanford* court said,

> In light of Gallo's extensive and trustworthy relationship with SIS and representation that he owned an interest in the home and that his wife had agreed to the mortgage, SIS was not required to take the investigative step of obtaining a title search to confirm those statements. *See* Restatement § 540, illus. 1. The law is clear that SIS was entitled to rely on the statements unless there were warning signs of their falsity, even if obtaining a title search was easy and a matter of bank policy.

*Sanford Inst. For Sav. v. Gallo,* 156 F.3d at 75. The court also said, "[h]owever, the reliance on misrepresentations known by the victim to be false or obviously false is not justified; falsity which could have been discovered by senses during a cursory glance may not be relied upon." *Id.* In the instant case, there had been no previous relationship between the Plaintiff and the Defendant. (Ct. Doc. 15 at ¶¶ 4, 5.) The Plaintiff also had in its possession the tax returns for years 2000 and 2001, which did not have any evidence of payment. This was clearly a fact that "could have been discovered by senses during a cursory glance." *Id.* It also was a "warning sign" already in the Plaintiff's possession. Based on these facts, the Court finds that the Plaintiff's reliance on the loan application alone was not justifiable.

■ The Court further finds that, even if the reliance was justified, the loan application was not made or caused to be published with the intent to deceive. The fact that the Defendant readily produced her tax returns for the years in question is totally inconsistent with an intent to deceive by not including the tax liabilities in the loan application itself. Count I is denied.

### CONCLUSION

This opinion constitutes the Court's findings and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate final judgment consistent with this opinion.